IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DISTRICT

**FILED**

SEP 1 9 2001

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

PROGRESSIVE SPECIALITY INSURANCE
COMPANY,

    Plaintiff,

vs.

BERT SHATTUCK ELLIS; DONNA FAYE
WILLIAMS,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. CV-01-PT-0979-M

**ENTERED**

SEP 1 9 2001

## MEMORANDUM OPINION

This cause comes to be heard upon plaintiff Progressive Specialty Insurance Company

(Progressive) and defendant Bert Shattuck Ellis' (Ellis) separate Motions for Summary Judgment

filed on August 16, 2001.

## FACTS

Progressive issued a policy of insurance to Ellis covering a 1998 MAXIV 600T

amphibious all terrain vehicle ("ATV"). The policy period extended from July 20, 1998 through

July 20, 1999.

During the late night hours of February 6, 1999, Ellis and three friends, Courtney

Williams (Williams), Travis Bedwell (Bedwell), and Randy Whorton (Whorton), decided to take

the insured ATV for a ride. Ellis and Whorton sat in the front seats while Bedwell and Williams

sat in rear of the vehicle. After riding through some mudflats for twenty to thirty minutes, Ellis

drove his ATV into Cowan Creek, a part of Weiss Lake in Cherokee County, Alabama.

Approximately half way across Cowan Creek the ATV ceased operating. Ellis' attempts to

restart the engine were to no avail.

/:

At some point during Ellis' attempts to get the ATV operational, one of the occupants of the backseat stood up, causing the vehicle to flip from right to left. The ATV flipped over causing all four occupants to enter the water. When Ellis surfaced, he noticed that Williams had surfaced and was holding the rear right tire. He then proceeded to assist Whorton in rescuing Bedwell who could not swim. Whorton and Ellis were able to bring Bedwell back to the ATV. Eventually, all four occupants were able to stay afloat by holding on to one of the six tires of the ATV.

After approximately five minutes of holding on to his tire, Whorton decided to swim to the shore for assistance. Ellis, Bedwell, and Williams remained behind; holding on to separate tires and kicking their legs to remain warm. Approximately ten to fifteen minutes after Whorton left for assistance, Williams released his grip of the tire and attempted to swim for the shore. Williams swam past Whorton and began to cramp. He called out to Whorton and informed him that he was cramping. Whorton yelled to Williams to get on his back, relax, and that he would get to him as quick as he could. Williams made no reply to these comments. Whorton eventually made it to shore, procured aid, and went back in a boat to bring in Ellis and Bedwell. At some point during this rescue Williams unfortunately drowned.

On February 2, 2001, Williams' mother, Donna Faye Williams, filed a wrongful death action against Ellis in the Circuit Court of Cherokee County.[1] The complaint alleges that Ellis negligently or wantonly operated the ATV in such a way as to cause the drowning of Williams. Ellis has made a claim for liability coverage under the Progressive policy. Progressive subsequently filed a Complaint for Declaratory Judgment seeking a declaration from this court

---

[1] The state court action is styled *Donna Faye Williams v. Bert Shattuck Ellis*, CV-2001-024.

2

that there is no coverage under the policy and that it has no duty to defend Ellis in the wrongful

death action nor a duty to indemnify him for any judgment returned against him in that action.

## ARGUMENT

Progressive makes two arguments in its Motion for Summary Judgment. First, it

contends that it is entitled to judgment as a matter of law because the policy in dispute does not

cover injuries to "passengers." Second, it asserts that summary judgment is appropriate because

there is no coverage under the policy since Williams' death did not arise out of a "use" of the

insured vehicle. In contrast, Ellis asserts that he is entitled to judgment as a matter of law

because Williams' death arose out of a "use" of the vehicle and because Williams was not a

"passenger" of the vehicle when he drowned. These arguments will now be addressed in turn.

Progressive's first argument is that the policy does not cover injuries to "passengers."

Progressive relies heavily on the language of the policy to support this argument. According to

Progressive, the liability coverage of the policy provides, "[W]e will only pay for injury to a

**passenger** on **your cycle**, if a premium has been paid by **you** for **Guest Passenger Liability** and

is shown on the Declarations Page." Progressive explain that the declaration page does not show

Guest Passenger Liability Coverage and does not show any premium for Guest Passenger

Liability Coverage. It notes that the application for the policy on page 2 in listing the policy

coverages limits states, "GUEST NONE." Finally, it states that the "Exclusions" section

contained in the "Liability Coverage" section of the policy specifically provides that "[t]his

coverage does not apply: For any person who is a **passenger** on **your cycle**. If a premium has

been paid for **Guest Passenger Liability** and is shown on the Declarations Page, then this

exclusion does not apply." Given this language, Progressive contends that the express terms of

the policy do not provide liability coverage and, consequently, this ground is dispositive on its

3

motion for summary judgment. *Citing Auto-Owners Ins. Co. v. Stokes*, 226 So. 2d 320, 327 (Ala. 1969) (an insured is bound by the plain policy terms); *Safeway Ins. Co. of Ala. v. Taylor*, 758 So. 2d 523, 525-26 (Ala. 2000); *Ex parte Rager*, 712 So. 2d 333, 335 (Ala. 1998) (insured is bound by terms of policy).

In response, Ellis reminds the court that exceptions or exclusions for coverage of a guest passenger must be narrowly construed so as to provide the maximum coverage for the insured and/or to be construed most strongly against the insurance company that drafted and issued the policy. *Citing Alliance Ins. Co. v. Reynolds*, 494 So. 2d 609 (Ala. 1986); *Cook v. Aetna Ins. Co.*, 661 So. 2d 1169 (1995). Ellis argues that he is entitled to summary judgment because Williams was no longer a "passenger" in the vehicle when he drowned. Ellis frames the question for the court as being whether under the terms of the policy Williams was "occupying" the vehicle at the time of injury. Ellis notes that the term "occupying" is defined in the policy in the following manner: **"Occupying** means on, upon, getting in, on, out or off." According to Ellis, when Williams left the ATV and swam to shore, he proceeded to take on a new activity and was no longer a passenger. Ellis relies on *Tyler v. Ins. Co. of North America*, 331 So. 2d 641 (Ala. 1976), for the proposition that the process of "alighting from" an insured vehicle "ends when the passenger has completed all acts normally performed by the average person in getting out of the vehicle and has embarked upon a course of conduct distinct from those acts necessary to exit the vehicle." Consequently, it is Ellis' position that Williams had "alighted from" the vehicle and was no longer a "passenger" at the moment he drowned.

Progressive has two replies to this argument. First, Progressive contends that the policy is unambiguous and should not be construed more favorably to one side than the other. In support of this proposition it quotes language from a decision of this district:

4

This court will construe an insurance contract as it is written when its meaning is unambiguous and clear. Southeastern Fire Ins. Co. v. Heard, 626 F. Supp. 476, 477 (N.D. Ga. 1985). It is the duty of the court to interpret the terms of an insurance contract in a rational and practical manner and only those clauses which are uncertain may be favorably construed for the insured. Green v. Merrill, 293 Ala. 628, 308 So. 2d 702, 704 (1975); Alabama Farm Bureau Mut. Casualty Ins. Co., Inc. v. Goodman, 279 Ala. 538, 188 So. 2d 270 (1966). Additionally the Alabama Supreme Court has held the following:

> In the absence of statutory provisions to the contrary, insurance companies have the same right as individuals to limit their liability, and to impose whatever conditions they please upon their obligations not inconsistent with public policy; and the courts have no right to add anything to their contracts, or to take anything from them.

Goodman, 188 So. 2d at 270.

*General Agents Ins. Co. of America, Inc. v. Compton*, 921 F. Supp. 716, 721-22 (N.D. Ala. 1996). In light of these propositions, Progressive argues that Ellis' assertion that the exclusion provisions of the policy should be construed in the insured's favor is without merit.

Progressive second reply is that if Williams was no longer a passenger of the insured vehicle, his "use" of the vehicle had necessarily ended, and thus there is no coverage. Progressive relies on *Chamblee v. State Farm Mut. Auto. Ins. Co.*, 601 So. 2d 922 (Ala. 1992), for this proposition. *Chamblee* involved an incident where an individual, after alighting from her parked car to the median of a street, was struck by a motorist after leaving the median to cross the street. The insurance policy involved provided liability coverage for bodily injury "caused by accident resulting from the ownership, maintenance or use of your car." The court in *Chamblee* concluded that there was no coverage under this policy because when the individual had reached a point of safety (the median), she had completed the act of exiting the vehicle. Consequently, she began a new activity that was "disassociated from a 'use' of the insured vehicle." In light of *Chamblee*, Progressive argues that if Williams was not a "passenger"

5

because he had "alighted from the vessel" and had "proceeded to take on a new activity," the "use" of the vehicle also ended and there is no coverage under the policy.

Progressive's second argument that summary judgment is appropriate is that the policy provides no coverage because Williams' death did not arise out of the ownership, maintenance or use of the ATV.  Progressive states that the policy only provides liability coverage for "bodily injury . . . arising out of the ownership, maintenance or use of" the insured vehicle.  It is Progressive's position that the "use" of the vehicle did not cause Williams' death, which, instead, resulted from his intervening decision to leave a point of safety and swim rapidly to shore.  It argues that Williams' decision to leave a position of safety broke the causal chain between "use" of the vehicle and his drowning.  Progressive notes that the Alabama appellate courts have not considered this precise issue.  However, it contends that Alabama courts have held that the fact an incident occurs in or about a vehicle does not itself give rise to insurance coverage.  *Citing American Liberty Ins. Co. v. Soules*, 258 So. 2d 872 (Ala. 1972) (no causal connection with use of vehicle where passenger injured when police officer's revolver accidentally discharged).  Progressive further argues that even though an incident has its origins in the use of an automobile, there is no coverage if the later injury is "disassociated" from the use of the vehicle.  *Chamblee, supra*.  Additionally, by analogy Progressive asserts that there was no "use" of the insured vehicle because Alabama courts have held that criminal assaults against the insured in, about or precipitated by operation of a vehicle did not arise out of the "use" of a vehicle.  *Citing USF&G v. Lehman*, 579 So. 2d 585 (Ala. 1990); *Allstate Ins. Co. v. Skelton*, 675 So. 2d 377 (Ala. 1996).  Finally, Progressive argues that there was no "use" of the vehicle by citing cases from other jurisdictions that have held that drowning does not arise out of use of a vehicle where the decedent voluntarily left a position of safety.  *Comparing Continental*

6

*Cas. Co. v. Hawkins*, 365 S.W.2d 722 (Ark. 1963) (no coverage when decedent left safety of car on bridge and was swept away in water and drowned), *and Security Mut. Life Ins. Co. v. Hollingsworth*, 459 P.2d 592 (Okla. 1969) (no coverage when decedent left safety of plane that landed on lake in an attempt to swim to shore and drowned after becoming entangled in trot line), *with Walden v. Automobile Owners Safety Ins. Co.*, 311 S.W.2d 780 (Ark. 1958) (finding coverage after decedent accidently drove car into bauxite pit filled with water, left car, and later drowned).

In response to this argument, Ellis initially notes that courts construe general liability coverage provisions liberally in favor of the insured and strictly against the insuror. *Cook, supra*. Ellis argues that the ownership, maintenance, or use of the automobile need not be the direct and efficient cause of the injury sustained. Instead, Ellis contends that Alabama courts only require that some form of causal relationship exist between the insured vehicle and the accident. *Citing Allstate Ins. Co. v. Skelton*, 675 So. 2d 377 (Ala. 1966). Ellis argues that a causal connection exists in this action. Ellis asserts that one of the intended uses of the ATV was water travel. The ATV was being used to traverse Cowan Creek when Williams drowned. In light of these facts, Ellis contends that a causal connection has been established and, thus, coverage under the policy is appropriate because the death of Williams arose out of the "use" of the vehicle.

## ANALYSIS

Summary judgment may be granted based upon facts developed during the pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for

summary judgment bears the initial burden of explaining the basis of his motion. *Id.* The non-

moving party then bears the burden of showing that there are specific facts demonstrating that

there is a genuine issue of fact for trial. *Id.* at 324. "When deciding whether summary judgment

is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a

light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291,

1293 (11th Cir. 1999). The trial court must resolve all reasonable doubts in favor of the non-

moving party, but need not resolve all doubts in a similar fashion. *Barnes v. Southwest Forest

Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).

This court must apply the substantive law of Alabama in this diversity case, unless

federal constitutional or statutory law requires a contrary result. *See Galindo v. ARI Mut. Ins.

Co.*, 203 F.3d 771 (11th Cir. 2000) (citing *Salve Regina College v. Russell*, 499 U.S. 225, 226

(1991)). To determine the law of Alabama, this court must follow the decisions of the Alabama

Supreme Court, and in the absence of such decisions on an issue, must adhere to the decisions of

the Alabama appellate courts unless there is some "persuasive indication that the state's highest

court would decide the issue otherwise." *Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 945 (11th

Cir. 1982). Furthermore, "[o]nly where no state court has decided the point in issue may a

federal court make an educated guess as to how that state's supreme court would rule." *Benante

v. Allstate Ins. Co.*, 477 F.2d 553, 554 (5th Cir. 1973). In making this "educated guess," federal

courts can consider all resources available, "including decisions of other states, . . . and federal

decisions, and the general weight and trend of authority." *Farmers Alliance Mut. Ins. Co. v.

Bakke*, 619 F.2d 885, 888 (10th Cir. 1980).

The Alabama Supreme Court and its appellate courts have not directly addressed the

issue presented.  This court must turn to general decisions of Alabama courts involving

interpretation of insurance policies, as well as relevant decisions from other jurisdiction and

common sense to make an "educated guess" as to how the Alabama Supreme Court would rule

on this issue.  The Alabama Supreme Court has provided the following guidance.  The insurance

policy is a contract that is to be "construed liberally in favor of the insured and strictly against

the insurer." *Allstate Ins. Co. v. Skelton*, 675 So. 2d 377, 379 (Ala. 1996).  When interpreting an

insurance policy, it must be read as a whole. *Allstate Ins. Co. v. Hardnett*, 763 So. 2d 963, 965

(Ala. 2000).  The policy provision in question cannot be read in isolation, but, instead, must be

read in context with the other provisions. *Id.*  If the court determines that the policy provision is

ambiguous, then the provision "will be construed most strongly against the insurer and in favor

of the insured." *Tyler v. Ins. Co. of N. Am.*, 331 So. 2d 641, 644 (Ala. 1976).  However, if the

provision in question is unambiguous, "then a court must enforce the policy as written and

cannot defeat express provisions, including exclusions from coverage." *Auto-Owners Ins. Co. v.*

*American Cent. Ins. Co.*, 739 So. 2d 1078, 1081 (Ala. 1999).  The question as to whether a term

is ambiguous is a question of law and is to be decided by the trial court. *Id.*

　　　　When a court is interpreting exclusionary provisions in a policy, which this court has

been asked to do, it is to interpret them as narrowly as possible, "so as to provide maximum

coverage for the insured, and are to be construed most strongly against the insurance company

which drafted and issued the policy." *Skelton*, 675 So. 2d at 379.  However, the "language in an

exclusionary provision in a policy of insurance should be given the same meaning 'that a person

of ordinary intelligence would reasonably give it.'" *Auto-Owners*, 739 So. 2d at 1081 (citation

omitted).  Consequently, "where no ambiguity exists, the contract will be enforced as written."

*Cook v. Aetna Ins. Co.*, 661 So. 2d 1169, 1170 (Ala. 1995).

Alabama's appellate courts have not directly interpreted the scope of Guest Passenger

Liability exclusionary provisions in motorcycle insurance policies.  Consequently, this court

must make an "educated guess" as to how the Alabama Supreme Court would rule if it was

presented with this issue. *Benante v. Allstate Ins. Co.*, 477 F.2d 553, 554 (5th Cir. 1973).  One

source of law that this court can consider in this determination is general Alabama case law

involving exclusionary provisions in insurance policies.  The general rule is that exclusionary

policies should be interpreted as narrowly as possible, "so as to provide maximum coverage for

the insured, and are to be construed most strongly against the insurance company which drafted

and issued the policy." *Skelton*, 675 So. 2d at 379.  With that in mind, the "language in an

exclusionary provision in a policy of insurance should be given the same meaning 'that a person

of ordinary intelligence would reasonably give it.'" *Auto-Owners*, 739 So. 2d at 1081.

Therefore, "where no ambiguity exists, the contract will be enforced as written." *Cook*, 661 So.

2d at 1170.

Given this guidance, Progressive is entitled to summary judgment because there is simply

no liability coverage for "passengers" under the policy.  In Part I entitled **"Liability Coverage,"**

the policy reads as follows:

> **We** will pay damages for which any **covered person** is legally liable, other than
> punitive damages, because of **Bodily Injury** and **Property Damage** arising out of
> the ownership, maintenance or use of **your cycle**.  However, **we** will only pay for
> injury to a **passenger** on **your cycle**, if a premium has been paid by **you** for
> **Guest Passenger Liability** and is shown on the Declarations Page.

The term **"Passenger"** is defined in the policy to mean "any person, other than the driver of **your**

**cycle**, while such person is occupying **your cycle** or in a side car attached to **your cycle**."  The

term **"Occupying"** is defined in the policy to mean "on, upon, getting in, on, out or off."

Furthermore, the **"Exclusions"** section of the **"Liability Coverage"** section specifically provides

that "[t]his coverage does not apply: For any person who is a **passenger** on **your cycle**. If a premium has been paid for **Guest Passenger Liability** and is shown on the Declaration Page, then this exclusion does not apply."

It is undisputed that Ellis did not pay a premium for "Guest Passenger Liability." The Declaration Page of the policy contains no notation of this coverage and shows that no premium was paid for such coverage. Furthermore, Ellis' application for insurance with Progressive reveals that no guest passenger liability coverage was procured by Ellis. Consequently, if Williams was a "passenger" on the ATV, then there is no liability coverage under this policy.

Williams certainly was a passenger. It is undisputed that Ellis was in the front seat of the ATV and that Williams was occupying the rear seat directly behind Ellis when the ATV flipped over into Cowan Creek. Williams was "occupying" the ATV, as that termed is defined in the policy, because he was "on" the ATV when it capsized. Furthermore, it could be said that Williams was occupying the vehicle when it capsized because he was "getting in, on, or off" it. It was certainly Williams' act of getting off the ATV that ultimately led to his drowning and unfortunate death. The aforementioned provisions are not ambiguous as a matter of law and should be enforced as written. This issue is dispositive and, thus, this court need not discuss the issue of whether Williams' death arose out of a "use" of the vehicle.[2]

The decision of this court is supported by decisions of other jurisdictions that have addressed this specific issue. In *Progressive Casualty Insurance Company v. Jester*, 683 P.2d 180 (1984) (en banc), the Supreme Court of Washington addressed the application of the specific "guest passenger liability" provision in dispute. In *Jester*, the late Kelly Jester obtained a policy

---

[2] The court does agree that if Williams was not a passenger, he was not using the vehicle. His only relationship grew out of being a passenger.

of motorcycle insurance from Progressive that excluded liability coverage for claims made by passengers. The agent informed Jester about the exclusion and encouraged him to obtain guest passenger liability coverage for an extra $23 premium. Jester declined and unfortunately was involved in a one vehicle accident while carrying Carolyn Wendt as a passenger. Wendt filed a personal injury suit against Willard Jester, personal representative for the late Kelly Jester, and Progressive filed a declaratory judgment action seeking a declaration that it had no duty to defend or to pay any sums recovered by Wendt. The trial court held that the exclusion was valid and the state supreme court affirmed for two reasons. First, it stated that the "policy Progressive sold Jester contain[ed] clear and unambiguous language excluding liability coverage for claims made by passengers." Second, it held that the guest passenger liability provision did not violate Washington public policy: "We hold public policy is not violated by a motorcycle insurance policy provision which excludes liability coverage for claims made by passengers, when the insured intentionally rejected that coverage when offered."

Another illustrative case is *Turcotte v. Foremost Insurance Company*. 460 A.2d 1369 (Me. 1983). In *Turcotte*, the plaintiff was a guest passenger on a motorcycle owned and operated by McKay. While a passenger, Turcotte was injured when McKay drove the motorcycle into an automobile. Turcotte sued McKay's estate and obtained a judgment for $113,358.41. Turcotte then sued Foremost to recover under the basic liability provisions found in McKay's motorcycle insurance policy issued by Foremost. Foremost filed a motion for summary judgment arguing that the policy did not provide liability coverage for passengers. The trial court granted summary judgment and the state supreme court affirmed. The supreme court noted that the policy provided that the insurance did not apply to "guest passengers 'unless Guest Passenger Liability coverage is afforded by the policy.'" The supreme court found that no

12

premium had been paid for guest passenger coverage. Furthermore, it commented that on the face of the policy appeared boxes with entries for amounts of various types of coverage, but the "Guest Passenger Liability" box was blank. Consequently, the supreme court held that Turcotte, as a guest passenger, could not recover under the basic liability coverage.

## CONCLUSIONS OF THE COURT

Progressive is entitled to summary judgment because Williams was a "passenger" on Ellis' insured vehicle. The liability coverage provision in dispute is clear and unambiguous. A plain and ordinary reading of the provision leads to the conclusion that Progressive did not contract to provide liability coverage for passengers on Ellis' ATV, unless he paid a premium for "Guest Passenger Liability." This was not done. This conclusion is further supported by case law from other jurisdictions which have held that this type of exclusion is clear and unambiguous and that it does not violate public policy.

This _____ day of September 2001.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT COURT JUDGE

13